ALBANY,
Sept. 1823

Colden
v
Knickerback
er.

## Colden, plaintiff in error, *against* Knickerbacker, defendant in error.

A writ of error to the supreme court will not lie upon a judgment by default.

And if brought, the proper course is neither to affirm nor reverse the judgment below; but dismiss the writ of error.

In error, to the supreme court, upon the coming in of the usual return, containing the judgment roll only—

The plaintiff in error alleged diminution, viz. that there yet remained in the court below, a *capias, return, filing, rule to plead, for default, interlocutory judgment, for reference to the clerk to assess damages, for report thereon, and for final judgment, a declaration and common bail piece, &c.;*

And prayed and had a certiorari to the court below, upon which transcripts of all these proceedings were certified.

Form of *alleging diminution,* and the *certiorari* in such case.

Upon the return to the certiorari, the plaintiff in error objected, not only error in the roll, but certain irregularities in the proceedings below, viz.

That the defendant below (plaintiff in error) did not appear in the court below; that his name in the *capias* and the subsequent proceedings were different; that there was a material variance between the declaration and roll; that common bail was irregularly filed; that the *capias* was returnable at a late day in term, and yet the declaration was entitled generally, &c.

And error in the roll was also insisted on, viz. that the declaration contained a count upon a promissory note, with the common money counts; and yet the clerk assessed damages generally, whereas he should have assessed upon the count on the note only.

And 12 of the court were for dismissing the writ of error, and, therefore, did not consider whether the above matters could be alleged for error, or not.

But 8 of the court were opposed to dismissing the writ of error:

Yet they were of opinion that none of the above matters were sufficient cause for reversing the judgment; and, therefore, it should be affirmed.

*Semble,* therefore, that these, and the like omissions and mistakes, not appearing upon the roll, are matters of irregularity—not error; and are the proper subjects of redress by motion in the court below:

And, *semble,* that it is not *erroneous* or *irregular* for the clerk to assess general damages on a judgment by default upon a declaration containing a count upon a promissory note, and the common money counts.

Where the plaintiff took his judgment by default, omitting, by mistake, to

ALBANY,       file common bail, the supreme court, on motion, allowed him to appear
Sept. 1823.   for the defendant *nunc pro tunc.* Per Sudam, senator, interrupting the
              argument for the defendant in error.

Colden
v.
Knickerback-        In error to the Supreme Court. The action in the
er
              Court below was *assumpsit* by Knickerbacker against Col
              den.

              The return to the writ of error contained, as usual, the
              judgment record only, by which it appeared that the plain-
              tiff below declared against the defendant upon a promissory
              note, alleged to have been given by the defendant to one
              Squires, or order, for $570 54, dated Sept. 21, 1820, and
              payable one year after date. The declaration, as appeared
              by the record, also contained the common money counts.
              Judgment passed against the defendant by default upon all
              the counts ; and, as it further appeared by the record, the
              damages of the plaintiff were assessed by the Clerk, gene-
              rally, and without distinguishing between the special and
              general counts.

              Upon filing this return, the plaintiff in error alleged dimi-
              nution thus :

              " And the said plaintiff, Cadwallader R. Colden, comes
              here into this Court, for the trial of impeachments and the
              correction of errors, by Aaron Burr, his counsel, on this 6th
              day of September, 1822, at the Capitol, in the city of Albany,
              and suggests and alleges to the said Court, that there is re-
              maining before the Justices of the people of the state of
              New York, of the Supreme Court of Judicature of the same
              people, a record of judgment in favor of the defendant in
              the above cause, who was plaintiff in the said Supreme
              Court, against the said plaintiff in this Court, and also a
              *capias, return,* and *filing,* the *rules to plead,* for *default,*
              for *interlocutory judgment,* for *reference to the clerk to as-
              sess damages,* for *report thereon,* and *rule for judgment,*
              the *declaration* and *common bail piece,* the *affidavits,* as well
              on the part of the plaintiff as on the part of the defendant, on
              a motion made successively in the terms of May and August,
              1822, to set aside the default, and the *rules* or *orders* made
              thereon by the Court, the transcript whereof is not certified
              and returned with the writ of error depending in this

Court; and thereupon the said plaintiff prays a writ of certiorari to be issued to the said Justices of the said Supreme Court, commanding them to certify the transcript of the said record and proceedings so remaining before them."

Whereupon a certiorari issued in these words:

"*The People of the State of New York*, by the grace of (L. S.) God, free and independent, to our Judges of our Supreme Court of Judicature, Greeting:

WE being willing, for certain causes, to be certified of the proceedings in a certain cause, lately depending in our Court before you, by our writ between John Knickerbacker, jun. plaintiff, and Cadwallader R. Colden, defendant of a plea of trespass on the case; and of the judgment thereupon obtained in our said Court, do command you, that the transcript of the proceedings in the said cause, to wit, the *capias, return* and *filing*, the *rules to plead, for default, for interlocutory judgment, for reference* to the clerk to assess damages, for *report* thereon, and *rule* for judgment, the *declaration* and *common bail piece*, the *affidavits*, as well on the part of the defendant as on the part of the plaintiff, on a motion made successively in the terms of May and August, 1822, to set aside the default, and the *rules* or *orders* made thereon by the Court, with all things touching the same, by whatsoever name the parties may be called therein; you send to our President of the Senate, Senators and Chancellor of the state of New York, in the Court for the trial of impeachments and the correcction of errors, distinctly and plainly under the seal of our said Supreme Court, before you, and this writ, *forthwith*, so that we may do thereupon what of right, and according to the form of the statute in such case made and provided, shall need to be done. Witness, JOHN TAYLOR, Esq. President of the Senate, at the Senate Chamber, in the Capitol, in the city of Albany, on the 6th day of September, one thousand eight hundred and twenty-two.

*John F. Bacon,* Clerk."

The return of this writ consisted of the transcripts required by the certiorari, excepting the *affidavits* used upon the motions in the Court below.

ALBANY,
April, 1823.

Colden
v.
Knickerback-
er.

Certiorar
thereupon.

From these it appeared that the plaintiff in the Court below was named in the *capias, John Knickerber,* but the *ac etiam* and the subsequent proceedings in the cause were in the name of *John Knickerbacker ;* the *date of the note* set forth in the *declaration,* was Sept. 21, 1821, and thus varied from that mentioned in the record ; and the note being payable, as set forth in the declaration, one year after date, *would not fall due under nearly a year after the commencement of the suit.*

The *capias* was returned and filed Nov. 6, 1821 ; and the plaintiff filed common bail, and a declaration, and entered his rule to plead, on the 29th of the same month.

The *capias* was returnable the 27th day of October, 1821, and the declaration was entitled of October term, generally, of that year. The term commenced on the 15th of Oct. The plaintiff entered a default on the 3d Jan., 1822 ; and a rule to assess damages upon all the counts. Now, all these matters were insisted on for error, as well, as the *general* assessment of damages. And accordingly,

*S. M. Hopkins,* for the plaintiff in error, stated the following points :

1st. That the *capias* is in the name of *John Knickerber,* but the subsequent proceedings are in the name of *John Knickerbacker.*

2d. That Colden did not appear in the suit, either by filing bail, or in any other mode as required by law ; the common bail piece filed by Knickerbacker, on the behalf of Colden, having been filed contrary to the statute, and therefore void.

3d. That from the showing of Knickerbacker in his declaration, he had no cause of action against Colden, at the time of the commencement of the action or at the time of entering judgment therein.

4th. That there is a variance between the declaration and the judgment record in this : that in the declaration Knickerber counts on a note made in 1821, whereas in the judgment record no such note is mentioned, but a note alleged to have been made in 1820.

5th. That the matters and causes of action alleged and set forth in the second count of the declaration, are triable and determinable only by a jury; but that, nevertheless, he whole matter contained in the declaration was referred ، ) the Clerk, who reported thereon.

6th. That the declaration is of October term, *generally*, referring to the *first day* of the term, although, from the showing of Knickerbacker, his writ was taken out after that day, and was returnable on the last day of the term.

He said, it is true, that a part of the objections are of form. Many errors may be called so, which are yet of vital importance. Matters of form are essential, to enable parties to avail themselves of their rights; and there is no safety for a defendant, if the plaintiff is allowed to travel entirely out of the ordinary course of judicial proceedings. Here the plaintiff's name is wrong, and there was no chance for the defendant to appear in a right name.

The plaintiff having brought the defendant into Court, should have allowed him a regular time to appear. Not having done so, the proceedings are intrinsically erroneous. The *capias* was returnable the 27th of October, and the plaintiff filed common bail on the 29th of November following. The defendant did not appear at all. Finding a judgment against him, he has a right to look to the continuity of the proceedings. The declaration relates to the first day of the term, and in judgment of law was put into Court before the return day of the process.(*a*) Had the plaintiff sued in his right name, he had no authority to file common bail, until forty days after the return of the process. The statute(*b*) is conditional, "that in cases where special bail may be required, if the defendant shall not cause the same to be given within double the time required for that purpose by the rules of the Court, it shall be lawful for the plaintiff to file common bail for the defendant." The 40 days, which are double the time allowed for pleading in the Supreme Court, did not expire till the 6th of December. The 20 days' time for appearing in that Court ran from the 27th of October, the return day of the writ. This formality should have been strictly complied with. The plaintiff can, in no case, in the Supreme Court, file common bail till after 40 days from the second week of term.(*c*) But the plaintiff has not only ap-

ALBANY,
Sept. 1823

Colden
v.
Knickerback-
er.

(*a*) *Vena-bles* v. *Daffe,* Carth. 113, 14.
(*b*) 1 R. L. 324.

(*c*) *Lane* v *Cook,* 8 John 359.

ALBANY, Sept. 1823.

Colden
v.
Knickerback-
er.

(d) *Doe* v. *Butcher,* 3 T. R. 611. *Delanoy* v. *Cannon,* 10 East, 328. *Smith* v. *Painter,* 2 T. R. 719.
(e) 1 R. L. 522, s. 15.

peared for us out of time, but he appeared for us at the sui of a person not named in the process. It is settled that he cannot do this even after the double time for appearing has expired.(d)

The plaintiff then declared upon a note payable nearly one year after the action was commenced; but when he comes to make up the record, he corrects the date, and makes it payable one year earlier.

The rule that the Clerk assess damages, generally, upon all the counts, is a substantial error, and decisive of the cause. The defendant's right to have the damages assessed by a jury have been wholly disregarded. The only exception to this right is by statute,(e) when a judgment by default, demurrer, or confession, is given upon a written contract for a sum certain. Wherever there is the least uncertainty in the damages, the law always calls for the intervention of a jury. The same thing is required by the most sacred rights of the parties. This very point was decided in the case of *Burr* v. *Waterman & Wells,* on error from the Mayor's Court of New York to the Supreme Court, M. S. May term, 1821.(f) The statute authorizing an assessment by the Clerk, in any case, is at best in derogation of a common law right, and should be construed strictly.

(f) BURR v. WATERMAN and WELLS.

Writ of error to the court of common pleas.

SUPREME COURT, of the term of October, in the year of our Lord one thousand eight hundred and twenty. The people of the state of New York have sent to their Judges of the Court of Common Pleas, called the Mayor's Court, in and for the city and county of New York, their writ close in these words, to wit: "The people of the state of New York, by the grace of God, free and independent: To the Judges of our Court of Common Pleas, called the Mayor's Court, in and for the city and county of New York, Greeting. Because, in the record and proceedings, and also in the giving of judgment in a plaint, which was in our Court of Common Pleas, called the Mayor's Court, before you, without our writ, between Joshua D. Waterman and Ralph Wells against Aaron Burr, of a plea of trespass on the case, manifest error had intervened, to the great damage of the said Aaron Burr, as, by his complaint, we are informed—we, being willing that the error, if any there be, should in due manner be corrected, and full and speedy justice done to the parties aforesaid in this behalf, do command you, that if judgment should be thereupon given, then you send to our Justices of our Supreme Court of Judicature, distinctly and openly under your seal, the record and proceedings of the plaint aforesaid, with all things concerning the same, and this writ, so that they

*J. L. Viele & A. Van Vechten,* contra.   The defendant will contend, that the judgment of the Supreme Court ought to be affirmed, for the following among other reasons :

may have them at the Academy, in the town of Utica, in the county of Oneida, on the third Monday of October next, that the record and proceedings aforesaid, being inspected, we may cause to be further done thereupon for correcting that error, what of right and according to the law and custom of the state of New York ought to be done.  Witness, AMBROSE SPENCER, Esquire, our Chief Justice, at the city of Albany, the 19th day of August, A. D. 1820.

*Fairlie, Bloodgood & Breese,* Clerks.

*G. Marsh,* Att'y."

The answer of the Judges of the Court of Common Pleas, called the Mayor's Court, within named.  The bill and record, whereof mention is within made, together with all things touching or concerning the same, to the Justices of the Supreme Court of Judicature of the state of New York, at the day and place within contained, under our seal distinctly and openly, we send, in a certain schedule to this writ annexed, as within to us commanded.

Return.

*Benj. Ferriss,* Clerk.

MAYOR'S COURT.  Pleas, &c. [The return set forth the judgment record in the court below, *verbatim.*  The *placita* was of June term, 1820.  The bill of privilege contained a count in *assumpsit,* upon a promissory note given by Burr, the defendant below, to Waterman & Wells, the plaintiffs below ; the common counts for money lent, money had and received ; and a count on an *insimul computassent.*  The record then set forth an *imparlance* to August term, 1820, and an interlocutory judgment of that term, and then proceeded thus :]   " And because it is suggested, and proved, and manifestly appears to the said Court here, that the said plaintiffs have sustained damages, by reason of the not performing of the promises and undertakings in the said bill mentioned, to 162 dollars and 12 cents, besides the costs and charges by the said plaintiffs about their suit in that behalf expended—

> Therefore it is considered, that the said plaintiffs do recover against the said defendant, their damages by occasion of the premises, to 162 dollars and 12 cents, *by the Court here assessed,* and also 22 dollars and 21 cents for the costs, &c.

Afterwards, to wit, in this same term, before the Justices of the said People of the Supreme Court of Judicature of the same People, at the Academy in the town of Utica, in the county of Oneida, comes the said Aaron Burr, by George Marsh, his attorney, and says that in the record and proceedings aforesaid, and also in giving the judgment aforesaid, there is manifest error in this, to wit, that the declaration aforesaid, and the matters therein contained, are not sufficient in law for the said Joshua D. Waterman and Ralph Wells to have or maintain their aforesaid action thereof against the

Assignment o errors.

Insufficiency of declaration

1. Because the plaintiff in error could have had complete relief, as to every error complained of, in the Court below, and by neglecting to apply there, has waived those errors, if they are such.

General as- said Aaron Burr: There is also error in this, to wit, that by the record
signment of aforesaid, it appears, that the judgment aforesaid, in form aforesaid given,
errors. was given for the said Joshua D. Waterman and Ralph Wells, against the
said Aaron Burr; whereas, by the law of the land, the said judgment
ought to have been for the said Aaron Burr, against the said Joshua anc
Diminution Ralph. There is also error in this, to wit, that by the record aforesaid it
alleged. appears that the said Joshua and Ralph appeared by Daniel S. Griswold,
their attorney, against the said Aaron Burr, in the plea aforesaid; never-
No warrant of theless there is no warrant of attorney filed, or remaining of record in the
attorney; said Court of Common Pleas, called the Mayor's Court, in and for the city
and county of New York, between the parties aforesaid, in the plea afore-
said, to warrant the said Daniel S. Griswold to be attorney for the said
Joshua and Ralph, against the said Aaron Burr, in the plea aforesaid. There-
Nor rule to as- fore, in that there is manifest error. There is also manifest error in this, to
sess damages. wit, that there is no rule or order in the said Court of Common Pleas, called
the Mayor's Court, authorizing the Clerk to assess the damages between
Writ of certio- the parties aforesaid; that the same were assessed contrary to law: And
rari prayed. the said Aaron Burr prays a writ of the people of the state of New York,
to be directed to the Judges of the Court of Common Pleas, called the
Mayor's Court, in and for the city and county of New York aforesaid, to
certify to the said Justices of the people of the Supreme Court of Ju-
dicature of the same people, the truth of the same, and it is granted to
Conclusion. him, &c. And the said Aaron Burr prays, that the judgment aforesaid, for
the errors aforesaid, and other errors in the record and proceedings afore-
said may be reversed, annulled, and altogether held for nothing, and that
he may be restored to all things which he hath lost by occasion of the said
judgment, &c. which said writ of *certiorari*, so prayed and granted, follows
in these words, to wit: " The People of the state of New York, by the grace
Certiorari, to of God, free and independent: To the Judges of our Court of Common
certify the Pleas, called the Mayor's Court, in and for the city and county of New
warrant of at- York: WE being willing, for certain causes, to be certified whether Joshua
torney, and D. Waterman and Ralph Wells made Daniel S. Griswold their attorney
rule for assess-
ment of dama- of record against Aaron Burr, of a plea of trespass on the case, before
gns, if to be you, our Judges of the Court of Common Pleas. called the Mayor's Court,
found, &c. in and for the city and county of New York aforesaid, of the term of June,
A. D. 1820, and also whether there be any rule for assessment of damages
between the said parties, or not—Do command you, that having searched
the files, entries, memorandums, and other remembrances of the rules, and
warrants of attorney, for the city of New York aforesaid, being in your cus-
tody of record, what you shall find therein concerning the said rule and
warrant of attorney, or either of them, between the said parties of the plea
aforesaid, you certify to our Justices of our Supreme Court of Judicature

2. Because none of the errors relied upon lay the foundation for a writ of error in this Court.

3. Because all the errors complained of by the plaintiff, if any exist, are cured by the statute of jeofails.

Colden
v.
Knickerback
er.

without delay at the City Hall of the city of New York, fully and entirely as the same remain in your custody, and this writ, &c. Witness, AMBROSE SPENCER, Esquire, our Chief Justice, at the Capitol, in the city of Albany, the 13th day of January, A. D. 1821.

*Fairlie, Bloodgood & Breese*, Clerks.

G. *Marsh,* Att'y.

The answer of the Judges of the Court of Common Pleas of the city and county of New York: Searching the files, entries, memorandums and other remembrances of the Court within named, we do not find any warrant of attorney in the within mentioned cause, on file. Searching also the files, entries, memorandums, and other remembrances of the said Court, we do find a memorandum of a warrant of attorney, endorsed on the bill filed in the said cause, in the words following, to wit: " City of New York, ss. Joshua D. Waterman and Ralph Wells put in their place Daniel S. Griswold, their attorney, against Aaron Burr, gentleman, &c., in a plea of trespass on the case." And we do find rules for interlocutory judgment, and that the Clerk assess the damages, entered in the term of July, one thousand eight hundred and twenty, as follows, to wit: " On motion of Mr. Griswold, attorney for the plaintiff, *ordered* interlocutory judgment, and that the Clerk assess the damages." And this we, the said Judges, certify to the Justices of the Supreme Court of Judicature of the people of the state of New York, within named, as we are within commanded.

*Per Curiam,*          *John L. Broome,* Clerk.

And hereupon, afterwards, to wit, on the 1st Monday of January, as yet, of January term, A. D. 1821, (*in nullo est erratum,* and continuance, by *curia advisare vult,* to May term, 1821.)

Return to the certiorari.

No warrant of attorney.

But a memorandum of a warrant.

And rules, &c.

SPENCER, Ch. Justice, delivered the opinion of the Court The error assigned, and principally relied on, is, that there being several counts—one on a note of hand for the payment of money, given by the plaintiff in error to the defendants in error, and other counts for money lent, money had and received, and upon an *insimul computassent,* the defendant below having made default in pleading, the attorney for the plaintiffs below took interlocutory judgment, and a rule that the Clerk assess the damages, without having entered a *nolle prosequi* on the other counts than the one on the note. Upon *certiorari* it appears there was no rule for a *nolle prosequi.*

The objection is fatal. (1 R. L. 522.) There is no right or authority in the Court below, to direct an assessment upon the money counts, or the *insimul computassent.* These the plaintiffs below have not relinquished. They are

Judgment erroneous, no *nolle prosequi* having been entered on the counts, other than the count on the promissory note; and the rule to assess damages and assessment and judgment thereon, being general.

There can be no assessment of damages by the clerk, on

ALBANY,
Sept. 1823.

Colden
v.
Knickerback-
er.

(f) Art 5, s

This is an attempt, by a writ of error, to correct mere clerical mistakes, without first applying to the Court below for their correction. But by adverting to the constitution,(f) it will be seen that this Court, was formed for the purpose of revising errors in the actual decisions of the Supreme Court. The Justices of the Supreme Court are required, on writ of error, to assign the reasons by which they were guided in the judgment of the Court below. But these errors all passed on in silence; and the Court. were never called to pronounce upon them, though perfectly competent to administer relief. Why did the defendant omit to apply to that Court? Shall he be allowed to delay and keep silence, during the whole round of this proceeding there, and then come here to correct errors, which he never brought to the view of the Supreme Court? That Court have given no decision upon these matters, within the meaning of the constitution, as is plain from the nature of the objections. The mistake of the name, the variance between the declaration and record, the mistake in filing the common bail piece, and the general assessment of damages, &c., are all matters of which the defendant ought properly to have availed himself in the Court below. The error in the name could not mislead; for the name is right in the *ac etiam.* The defendant probably knowing the plaintiff's demand to be just, lies by till the judgment is perfected. He doubtless knew of the irregularity, but if not on discovering it, he should have gone to the Supreme Court, where the fact of his knowledge could have been tried on affidavit. The delay, after a knowledge of his rights, should defeat his application to set aside the proceedings, and would have had this effect by the rules of that Court.

the     common as much part of the claim, as the note; and *non constat,* that the damages
money counts, have not been assessed on these counts. The authorities cited by the plain-
or on an *insi-* tiff in error show that a *nolle prosequi* should have been entered, or it is
*mul computas-* error.
*sent*

Judgment reversed

[Sudam, Senator. Will error lie for a mere irregularity? I had supposed it would not. The usual course is to seek redress by motion in the Court below.]

*Hopkins*, said he was not prepared, at this moment, to say, upon authority, that error would lie; but he insisted that every *irregularity* is *error*. *Error* is a generic term; and includes not only those defects apparent upon the face of the record, but every omission or mistake in proceeding to judgment, which would be a ground for setting it aside in the Court below.

*Viele & Van Vechten*, denied that every irregularity is technically an error, so as to be the subject of a writ of error. But suppose it to be as contended on the other side, at any rate, these matters should have been suggested to the Court below, in order to warrant a writ of error. In *Sands v. Hildreth*,(g) on appeal from the Court of Chancery, the Chancellor stated that the appellants never appeared at the hearing to make a defence, in consequence of which, his decree was given as a matter of course, on the default of the defendants below. This Court, therefore, dismissed the appeal. This was on the ground that the merits had not been reviewed in the Court below, through the neglect of the appellants. In *Gelston and Schenck v. Hoyt*,(h) the defendants below joined in demurrer to their special pleas, but when the demurrer was called upon the calendar, they made default, and judgment passed without argument; and this Court, for that reason, refused to hear the demurrer argued here. The reasoning of the Chancellor, in that case, applies most emphatically, to these matters of irregularity. "It is, (says the Chancellor,) (i) an unfair proceeding; for it takes from the party demurring, an advantage which he would have been entitled to in the Supreme Court, if the inclination of that Court had been against him of withdrawing his demurrer, and replying to the pleas. So of all matters of irregularity. The Court below will exercise a discretion, when their attention is called to them, in amending or overlooking them altogether, or setting aside the proceedings according to the various circumstances of such

(g) 12 John 493.

(h) 13 id 361.

(i) Id. 576

ALBANY,
Sept. 1823.

Colden
v.
Knickerbock-
er.

(j) 17 John.
469.

case.  A writ of error deprives us of all these advantages. In *Henry* v. *Cuyler et ux.*(j ) this Court quashed a writ of error brought by the defendant below, who had demurred and suffered judgment against him upon the demurrer by default, although the same question had been determined against him in another cause ; and the cause was brought here by consent of counsel.

If the doctrine of these cases is sound, the writ of error in this case cannot be sustained.  In cases of irregularity, the objection must be made at the first opportunity which offers. This is not only the rule of law, but it is required by common justice.  It is unjust to lie by in silence, for months and years, till the cause has gone through all its forms, and then surprise the party by a writ of error, or appeal, even after an execution satisfied.   All the irregularities in the proceedings below are thus waived by the party entitled to object. The inference is, that he means to acquiesce, on the judgment being against him according to the course of the Court.   This action was upon a promissory note.   Perhaps the very reason why the Court below was not applied to, was because the irregularity had been waived by delay, and there were no merits upon which to found the application.

But suppose error will lie, where the party has suffered a judgment by default, it does not follow that every mistake is the proper subject of a writ of error.  Will error lie for an imperfection, of which a party cannot avail himself in pleading ?   The *capias* does not appear upon the record ; and when it is defective, it is almost a matter of course to amend it in the Court below.  A mistake in the name is amendable.(k)  It would be a libel upon justice, to say that every little slip of an attorney or clerk is to ground a writ of error.  These the Courts will always correct, and they are never taken advantage of in practice, except for the purposes of legal chicanery.

(k) Tidd. Pr
124, 5, and
cases there ci-
ted.

If the party will come here upon these matters, this Court will, at least, hold him to the rules which govern in the Court below.  Here is a delay since Nov. 29th, 1821, to make an objection to the mode of appearance.  The defendant now comes in and says, " I have never appeared.

On my neglect to do this, the plaintiff had a right by statute to appear for me. But he did this prematurely; and thereby took away my right to appear at all." We deny the consequence. We did that which was a part of the defendant's duty; and which he has altogether neglected. If we appeared for him out of season, he should have treated our act as a nullity, and appeared of course, or got rid of our irregular appearance upon motion, and then have come in by his own act. The defendant should have moved in this case, to set aside the proceedings before the next term.(1)

ALBANY, Sept. 1823.

Colden v. Knickerback-er.

(1) *M'Evers* v. *Markler*, 1 John. Cas. 428. *Jones* v. *Dunning & Doe*, 2 id. 74.

[SUDAM, Senator. I remember a case in the Supreme Court, in which I was concerned as counsel, where the plaintiff went on and took his default by mistake, without naving filed common bail at all, and the defendant had not appeared in any way. In that case, the Court considered the filing common bail a mere matter of form, and allowed the plaintiff, on motion, to appear for the defendant, *nunc pro tunc*.]

The objection that the declaration was of October term, generally, is merely technical, and if it could be urged as irregularity, either here or in the Court below, it is clearly amendable. But, according to the reasoning on the other side, it is *no* objection. It is said the caption relates to the first day of term, and thus in contemplation of law, precedes the return day of the *capias;* but it is not denied that it also extends to every other day in the term, including the last, or return day, as well as the first. These cases of relation to the first day of term are frequent in our judicial proceedings. They depend, however, on a fiction of law, which is always moulded to the purposes of equity.

Variance between the declaration and record cannot be objected here. The record is right; and this is the only evidence of the proceedings below. As between this and the declaration, the record should govern. The very reason why the defendant did not go to the Supreme Court was, probably, because the record gave the true date of the note, We venture to predict that this Court will have business

ALBANY,
Sept. 1823.

Colden
v.
Knickerback-
er.

(*l*) 1 R. L.
522, s. 15.

enough, and not of a very pleasant nature, if they once con sent to take cognizance of petty irregularities like this.

'The damages were properly assessed by the Clerk. The declaration contains one count upon a promissory note. To this the money counts are superadded, which is the usual case in declaring upon a note. The statute(*l*) provides that when judgment by default is given in any action upon any promissory note for the payment of money, the Court shall direct the Clerk to assess the damages. These general counts are as good upon a promissory note, as a count setting forth the note itself. Do they not, then, come within the language of the statute? An action containing these counts may properly be called an action upon a promissory note. But if error, it is a matter which the Court below should have been called upon to correct.

If the note is misdescribed in the declaration, the plaintiff must then resort to his money counts. In such case he must give proof of the note to the Clerk within the 18th section of the act. (1 R. L. 523.) The Clerk is in such case required at the request of either party, to reduce the evidence to writing, and report it to the Court specially, who are to pass upon its competency—so that no danger can arise from his assessing damages upon the money counts.

[SUDAM, Senator. The usual practice in England is, I believe, to enter a *remittitur* as to the general counts, when the damages are assessed by the Clerk.]

*Velie & Van Vechten*, referred to *Shepherd* v. *Charter*, (*m*) *Messin* v. *Massareene*,(*n*) *Rashleigh* v. *Salmon*,(*o*) and *Andrews* v. *Blake*,(*p*) to show the distinction between the practice in England, and that of this state.(*q*) In England, it is matter of practice. It does not, as here, depend upon a statute provision. It will be seen from the cases cited, that there the paper upon which the assessment takes place, must as matter of practice, be spread upon the record. But with us this cannot be important. The party has notice of the assessment, and may appear and oppose any extravagant or otherwise improper assessment.

(*m*) 4 T. R. 275.
(*n*) Id. 493.
(*o*) 1 H. Bl. 252.
(*p*) Id. 529.
(*q*) Vid. Tidd. Pr. 515.

In a note to *Longman* v. *Fenn*,(n) a case is cited from Fitz-G. 162,(1) where the Court of K. B. refused to set aside the judgment, because the writ of inquiry did not appear upon the roll.

The legislature, conscious that formal errors, not affecting the merits, might be committed, passed the statute of *amendments* and *jeofails*.(o)  To give this statute complete effect, the courts do not wait for an actual amendment; but where the error alleged is merely formal, they consider the amendment as already made; or overlook it as having never existed.  This principle has been frequently acted upon.(p)

*Hopkins*, in reply.  There is no doubt that, if the defendant had voluntarily appeared, or his judgment had been after verdict, many of these errors would have been amendable.  But gentlemen forget that this is not an application to amend.  It is a proceeding on an issue of *in nullo est erratum* upon multiplied irregularities.  The course pursued on the other side was unexpected, and has driven me to a course of research so sudden and desultory, that it is difficult to methodize the authorities which I must use in reply. Almost every volume of law mentions the distinction between faults curable and incurable by verdict and *nil dicit ;* but perhaps we must search in vain for an authority to show, that all the mistakes and omissions which we complain of, would not be cured by the default.  It would be difficult to find an adjudged case in favor of bringing an action of debt upon a bond; and it is so in relation to severa of the errors assigned.  Much has been said of the justness of the plaintiff's demand.  But this Court are called upon for a decision which is to form a precedent upon a record brought here for adjudication on its validity, and in which specific errors are assigned.  The Court are confined to the face of the record.  They will not yield to a course of argument which will make every thing uncertain, and

ALBANY, Sept. 1823.

Colden
v.
Knickerback
er.

(n) 2 H. Bl 543.
(o) 1 R. L 117.

(p) *Richardson* v. *Backus,* 1 John. 59. Tidd's Pr. 664, and Cas. Temp. Hardw. 43, 44. *Cheetham* v. *Tillotson,* 4 John Rep. 499.

(1) This is *Mallory* v. *Jennings,* in Fitz-G.  It was held that the want of an award of a writ of inquiry upon the roll, in assumpsit, was cured by the statute of amendmsxa.

Colden
v.
Knickerback-
er.

render it impossible to advise what course shall be taken upon a given state of things appearing of record.

May not a writ of error be brought upon irregularity, or error in the intermediate proceedings? If not, what becomes of the multiplied distinctions in the books between errors curable and incurable, under the statute of *amend· ments* and *jeofails*? In Tidd's Pr. 102, authorities are cited, showing that the want of an original writ is aided by a verdict, though otherwise of a defective original. It is there said, that if an amended original is returned on certiorari, it will save the verdict, though it were originally defective. But in this case no amendment is pretended. · We are at issue upon the error as it stands. As was remarked by an honorable Senator, the Court below might have ordered common bail filed *nunc pro tunc*, to save the proceedings, but they were never asked to do this ; and if the doctrine contended for here is to prevail, the statute of common bail is a nullity.

Lilly's Entries, 221 to 292, present a series of precedents in which errors are assigned in the intermediate proceedings in the cause. Many of these are in mere matter of form, but notwithstanding taken for granted to be error unless amended. The want of a warrant of attorney, or the appointment of a guardian, no venire, no original and the like, are treated as fatal errors, unless amended below and shown to be perfect by a return to the certiorari.

Error will lie upon a judgment by default. *Salkield* v. *The Ld. William Howard*,(q) is an express authority, and in Serjeant Williams' note to *William* v. *Gwyn*,(r) it is said that error will lie by the heir upon a judgment in a real action. In *Edwards* v. *Blunt*,(s) it is decided that after a judgment upon demurrer, there could be no motion in arrest, but agreed that it would be otherwise after a judgment by default. In *Creswell* v. *Packham*, (t) judgment was given silently, and without argument, upon demurrer, and the Court say that a motion in arrest cannot be heard, but they agreed that error would lie.

The cases showing what errors are fatal after a judgment by default or upon verdict, are cited in 2 Dunl. Pr. 705.

(q) Cro. Jac. 547.
(r) 2 Saund. 46, n. (6)
(s) 1 Str. 425.

(t) 6 Taunt. 650.

Lilly, 221, assigns for error that the original was *clausum fregit*. The judgment was not reversed because the error was not amendable, but because it was not in fact amended. The same, 234, assigns for error, that an original and *capias* issued before the cause of action accrued. This shows that error may be assigned in the mesne process as well as in the original. The same author, 236, gives an assignment of errors that there is no writ of inquiry, in opposition to the case cited on the other side from H. Black stone and Fitz-Gibbon. Error was assigned that the defendant was in the Fleet, and no declaration, served upon him.(u) To serve the declaration personally, in that case, was a statute duty in England,(v) as filing common bail was here. In this as in that case, the defendant is not in Court, except for the purpose of a particular mode of proceeding ; and the party must keep within the terms of the statute. Error was assigned in the admission of a *prochein amy ;(w)* and in *Phillips* v. *Smith.(x)* error was assigned for want of almost all the intermediate proceedings, which were amended and certified.

All the arguments *ad captandum* such as that we should have stood upon our guard, and watched and amended, fail before these authorities. We were not thus bound to play the guardian for the plaintiff's attorney. What are lawyers' forms and precedents for ? What but to preserve the boundaries and barriers by which legal proceedings are to be kept regular ? And is not the party to see at his peril, that his proceedings are regular ? Suppose a lawyer files a judgment roll without any previous or intermediate proceedings : it is said by gentlemen that we cannot go beyond the record itself. In such a case the clerk on error returns a regular record ; and if we are thus confined, no judgment can be reversed. An opportunity to set it aside has perhaps gone by in the Court below. A notice of the motion may not have been signed ; or the party may have delayed his application, for some cause which the Court below, in the exercise of its discretion, may not think sufficient to excuse the delay ; must the party sit quietly down and submit to the sacrifice of his whole estate, perhaps from a mere

ALBANY, Sept. 1823.

Colden
v.
Knickerback-
er.

(u) Lill. Ent. 246.
(v) 4 & 5 W. & M. c. 21.

(w) Lill. Ent. 289.
(x) id. 254 to 268.

slip of the pen? Suppose a *ca. sa.* had been the first pro-ceeding in this case. We might as well be asked, " why did you not appear and defend the action ?" in that case as in the present one. The *capias* was void and we were not bound to notice it.

Has the constitution altered the settled order of things which we have been considering? Is so important a change to be introduced by mere implication? If so, would not a substitute have been provided? We had early adopted the English statute of *amendments* and *jeofails*, which pre-suppose that writs of error will lie upon judgments by de-fault on grounds which the statute professes to cure. Af-

(y) Col. Cas. 41.

ter the adoption of that statute, in *Price* v. *M'Evers,*(y) er-ror was brought to this Court upon a judgment by default against the defendant in the Supreme Court, (*this very case*) upon a mere miscast of sixpence in the *in toto attingens;* and the writ was holden to lie; though the record was amended upon the defendant in error paying all the costs. Here, though the party may be permitted to amend the for-mal errors, the Court cannot allow an amendment of the errors in substance; the prematurity of the suit, and the mis-assessment of the damages.

This is not a proper occasion on which to make the ob-jection that error will not lie upon a judgment by default. It should come upon motion to quash the writ of error. It is remarkable, that at a previous term a motion for such an order was made and refused, in this very cause, as I have been informed.

*Viele.* With permission, I must correct the gentleman in his statement as to the result of that motion. It is true, that such a motion was made; but it was not passed upon, be-cause the late Chancellor was absent. It was merely sug-gested by an honorable member of the Court, that the cases upon the authority of which the motion was made, did not apply to this case.

*Hopkins.* Surely the suggestion was correct. Those cases do not apply to errors which the opposite party him-self has committed; but merely to cases where the cause

is put at issue, and the party makes default at the hearing.(z)    They have been cited on this occasion ; and are either defaults in arguing demurrers, or at a hearing in the Court of Chancery when the cause is called upon the calendar.

That it is fatal on error, if it appear by the record that the cause of action arose after the commencement of the suit, the Court are referred to *Cheetham* v. *Lewis*,(a) *Venables* v. *Daffe*,(b) the note to *Barker et ux*. v. *Thorold*, (1 Saund. 40,) and *Warring* v. *Yates*.(c)

THE CHANCELLOR.    All the proceedings in the suit in the Supreme Court being returned, it appears that judgment was entered against the defendant by default, and that the proceedings passed through the offices of the Supreme Court, silently, in respect to the Judges, who were never asked to correct any irregularity, or to afford any relief to the party, who now assigns errors in those proceedings. The writ of certiorari issued, in order to bring into this Court all the proceedings not stated in the record, required any affidavits used on a motion to set aside the default, and any rules or orders actually made by the Supreme Court thereon ; but no such affidavit, rule, or order, is returned. The plaintiff in error, having made no application whatever to the Supreme Court, for any redress, now asks this Court to reverse the judgment thus entered against him.    The Judges of that Court not having, in fact, decided any question in the cause, have not given reasons upon this occasion.

If a defendant, making no defence in the Supreme Court, suffering a judgment to be entered against him by default, and making no application to that Court for any redress, might come before this Court and ask the same redress which that Court might have afforded, this Court would become, in effect, a Court of original jurisdiction, and would be employed in deciding questions which the Supreme Court had never determined.    Such a course of proceeding would be inconsistent with the constitution, and pregnant with great mischiefs.    The jurisdiction of this Court is merely appel-

ALBANY,
Sept. 1823

Colden
v.
Knickerback-
er.

(z) *Chain-ley* v. *L*.*d* *Dunsony* an. others, 2 Sch. & Le. 712, 713, p Ld. Redesda¹ id. 719, 72 per L. Carleton a1 Erskine.
(a) 3 Joh Rep. 42.
(b)    Cart. 113.
(c) 10 Joh: 119.

The cas, stated.

Jurisdiction of this court is

ALBANY,
Sept. 1823.

Colden
v.
Knickerback-
er.

'y appel-

late. It is a jurisdiction to re-examine and re-judge ; to cor rect erroneous decisions actually made ; to affirm, reverse, or alter determinations made by Judges, who may give, and are bound to give reasons for their determinations. It is not a jurisdiction to determine, in the first instance, causes or questions which have not been submitted to the decision of other Courts. This separation of jurisdictions it is our duty to maintain. He who comes here to complain of errors must show not merely the formal proceedings which in a general course of practice may take place, without the knowledge of the Judges, and without any direction from the Court, in the particular cause, but he must also show some judgment or some decision, upon a question actually presented to the Judges for their determination.

Writ of error upon a judg- ment by de- fault dismiss- ed.

In this case, the plaintiff in error, not having submitted to the Supreme Court any of the objections which he now ur ges here, and not having made the least effort to obtain the decision of that Court, upon any one of those objections, he is not entitled to be heard in this Court. The proper disposition of such a case is, I conceive, not to affirm or re verse the proceedings, but to dismiss the writ of error.

BOWKER, BOWNE, BRONSON, CRAMER, DUDLEY, EARLL, GREENLY, HUNTER, PORTER, THORN and WHEELER, Senators, concurred.

SUDAM, Senator. This cause comes before the Court on a writ of error to the Supreme Court, and all the supposed errors assigned by the plaintiff, (except the 5th,) are those existing in the interlocutory proceedings in the Court below, and do not appear in the record. These proceedings (the *capias*, declaration, &c.) have been brought into this Court, by a writ of *certiorari*, and three questions are presented for its consideration.

The questions presented.

1. Whether this Court on a writ of error will take cogni zance of mere irregularities in the Court below, which might be corrected there.

2. Whether this Court will sustain a writ of error to the Supreme Court, when the judgment in that Court has been

permitted to be taken by default, the error assigned appearing on the face of the record.

ALBANY,
Sept. 1823.

Colden
v.
Knickerback-
er.

3. When the assessment of damages by a Clerk of the Supreme Court, on a declaration containing a count on a promissory note, and *the money counts,* is authorized by our statute.

I am satisfied that this Court ought not to take notice of mere *formal defects* in the proceedings of the Supreme Court. (*Cheetham* v. *Tillotson,* 4 John. Rep. 499.) It is for that Court to redress injuries which may result from a violation of its rules or practice, and it could not be tolerated that judgments in that Court should be reversed here, for mere mistakes in form, and in no wise affecting the merits of the controversy.

This court
will not notice
mere formal
defects, arising
from rules of
practice in the
supreme court.

2. The second question—whether the Court will sustain a writ of error in the Supreme Court, on a judgment by default in that Court, deserves to be seriously considered.

Whether er-
ror lies upon a
judgment by
default.

This point is presented by the counsel for the defendant in error, as a preliminary objection, and they contend that the writ of error *ought to be quashed.*

Is made a pre-
liminary ob-
jection.

In support of their position the counsel cited the case of *Gelston & Schenk* v. *Hoyt,* (13 John. 561.) In that cause the plaintiff below had demurred to two of the special pleas put in by the defendants, who joined in the demurrer, but *declined* arguing the demurrer before the Supreme Court, when the cause was called on, and permitted a judgment on the demurrer by default. That case differs essentially from the one now under consideration. The party had made his defence. He was in a situation to have taken the judgment of the Supreme Court upon the very question which he attempted to discuss in this Court, and he was very properly told it was an established rule, that a point waived by him in the Court below could not be open to discussion in this Court. He had himself abandoned that ground, and by this means misled his adversary, and deprived him of rights which the Supreme Court could have afforded him, had the demurrer been overruled. It was a *voluntary abandonment of a point* on which it was in his power to have taken the judgment of the Supreme Court, and if not satisfied, then to call

Cases cited to
support it.

ALBANY,
Sept. 1823.

Colden
v.
Knickerback-
er.

for the opinion of this Court. So, also, in the case of *Sand*
v. *Hildreth*, (12 John. Rep. 493.) There the cause had
been regularly set down for a hearing on bill and answer,
and upon notice to the party, the appellant did not appear,
but suffered a decree to pass against him by default. This
Court dismissed the appeal, because he had voluntarily per-
mitted a decree to pass against him, when he might have
taken the judgment of the Chancellor on the merits of his
cause. If he had taken his opinion, it might have been un-
necessary to resort to this Court. Not having done this, he
was presumed to have acquiesced in the justice of the judg-
ment pronounced by the Chancellor, and this Court would
not aid him in a course of litigation which he had once con-
cluded to abandon.

A party who,
on hearing, or
notice, volun-
tarily with-
draws himself
from the delib-
erate judg-
ment of the
court, should
not be heard
on appeal or
error.

Preliminary questions of this kind are always addressed
to the sound discretion of the Court, guided by principles
which have heretofore, and ought in future to govern Courts
of appellate jurisdiction; and I fully subscribe to the doc-
trine, that a party who has placed his cause in a situation
to receive the deliberate judgment of the Supreme Court or
Court of Chancery, and who, upon a hearing, on notice,
voluntarily withdraws himself from the deliberate judgment
of the Court below, and permits his adversary to recover by
his default, is, and ought to be precluded from agitating the
same points in this Court.

But this is
not the plain-
tiff's case.

But the case of the plaintiff in error is not within the rule
laid down in the cases cited, nor is it within that established
in the case of *Henry* v. *Cuyler*, (17 John. 469.) The
plaintiff in error was prosecuted in the Supreme Court, and
he did not appear to the writ. He permitted the plaintiff
below to perfect his judgment, and he now says that there is
error in that record. I cannot subscribe to the doctrine, that
to enable a party to maintain his writ of error, (which is a
writ of right,) it is necessary that he should *appear* and *liti
gate* the suit in the Court below. He *may rest* on the hon-
esty and integrity of the plaintiff, and presume that he will
not enter a judgment for a greater sum than is justly due.
But he may find himself egregiously deceived. A judgment
may have been entered against him for $10,000, when only

$100 was due. And shall it be said that, in such a case, he cannot take advantage of the errors of his adversary, to reverse an unjust recovery? This may be stating an extreme case, but a moment's reflection will suggest a variety of cases in which the greatest injustice might be effected, and the injured party without a remedy, unless his writ of error is secure to him. If he appears in the suit below, he then takes into his own hands the estimate of his rights. If he *waives* them, it is his own act, and he ought to be concluded. But if he trusts to the plaintiff, if he does not place any obstacles in his way to a speedy recovery, and he afterwards finds that the plaintiff himself has so conducted the suit, that in judgment of law his proceedings are erroneous, he is, in my opinion, entitled to the judgment of this Court upon the *record.*

Upon the face of all our records the judgment recorded is that of the *Court:* and I can see no constitutional objection to sustaining this writ of error. A judgment by default is as much the judgment of the Court, as that on a verdict, or after argument on a case made. The words of the constitution are, (Art, 5, s. 1,) " And when a writ of error shall be brought on a judgment of the Supreme Court, the justices of that Court shall assign *the reasons for their judgment.*"

Where is the difficulty in the Justices of the Supreme Court assigning the reasons of their judgment? In the case of *Gelston* v. *Hoyt,* before cited, Chief Justice Spencer assigns, as the reason for the judgment, that " when the cause was called, (meaning the issue joined on the demurrer,) the defendant's counsel appeared and declined to argue. Whereupon judgment was given for the plaintiff, on the defendant's counsel declining the argument." Upon these reasons, assigned by the Chief Justice, it appeared the plaintiffs in error had waived, in the Court below, that part of their defence which was embraced by the demurrer, and this Court justly held them to it.

In the case now before the Court, on the 5th error assigned, (which is the only one appearing on the face of the record) there could be no difficulty in assigning the reason why

*Margin notes:*

ALBANY, Sept. 1823.

Colden
v.
Knickerbacker.

A judgment by default is as much a judgment of the court as if rendered on a verdict.

And the supreme court may assign reasons for it.

ALBANY,
Sept. 1823.

Colden
v.
Knickerback-
er.

the Court referred the matter to their Clerk, to assess the damages. In the act (1 R. L. 134, s. 7) organizing this Court, and regulating the course of its proceedings, it is declared that this Court shall " examine all such errors as shall be assigned or *found in such record,* or in any process or proceedings concerning the same, and *call upon* the Judges of the Supreme Court to assign the reasons of such judgment."

Writ of error not confined to cases actually argued in the supreme court.

I cannot discover, either in the language of the constitution, or in the words of the statute, that the writ of error can be supported in those cases only which are *actually* argued before the Justices of the Supreme Court.

Cases of great hardship and injustice might arise, in which the party would be without a remedy, unless it be true that a writ of error to the Supreme Court can be maintained on a judgment or decision of that Court upon interlocutory proceedings, (such as motions to set aside judgments for irregularity, &c.)

Error will not, in general, lie upon a decision on a question of practice, arising upon affidavit in the supreme court.

If I understand his honor the Chancellor, his opinion is, that such would be the proper course, and it may be supposed that he is supported by the judgment of this Court, in the case of *Clason* v. *Shotwell*, (12 John. Rep. 31.) I concur in the opinion of the Court on the *very point* necessarily decided in that cause. *It went far enough to reach that individual case,* which formed an exception to the general rule. But I must dissent from the reasoning which would seem to go beyond the case then under consideration. This Court has never, as yet, said that a writ of error can be brought upon the opinion of the Supreme Court on a case presented to them by affidavits, and arising out of the practice of that Court, and I trust they never will so pronounce the law.

Error was brought in this court, on a judgment by default, in Cheetham v. Tillotson, 5 John. 430.

I am entirely supported in my opinion by the case of *Cheetham* v. *Tillotson,* (5 John. Rep. 430.) That was a writ of error on a judgment in a Supreme Court, by *default* and *damages assessed on a writ of inquiry.* The error alleged was, that the *charges in the declaration were not libellous.* The learned counsel, ( *Woodworth & Henry*) who argued the cause, never raised a doubt as to the jurisdic-

tion of this Court, though the excitement produced by that controversy was well calculated to elicit all technical objections to the writ of error. The *judgment* of the Supreme Court was reversed.

From a review of all the authorities, I am satisfied that the established rule of this Court is, to deny to a suitor the right of litigating questions *here* which *he had placed in a situation to receive the judgment of the Court below*, and which he had, *on the hearing there, voluntarily abandoned ;* and that, with the exception of the case of *Clason* v. *Shotwell*, this Court have never sanctioned a writ of error, to review the decisions of an inferior Court, pronounced on affidavits, and that this was a case *sui generis*, and ought not to *be extended beyond the precise point there decided ;* that the case now before the Court is within the authorities cited ; and that the writ of error ought *not to* be quashed for the cause assigned.

When a judgment is taken by default, the party puts himself upon the *regular proceedings* of the plaintiff, and he never can be said to waive that to which he never assented, or in which he never was an actor. Nor can this Court exclude a case of palpable error, (when such a case shall be presented,) merely because the defendant below did not appear in the suit. It would in my opinion, violate the first principles of justice, as well as the words of the constitution, and the law by which this Court is organized.

3. This leads me to the consideration of the 5th point made by the plaintiff in error—that the declaration containing a count upon a promissory note, and the money counts, the damages ought to have been assessed *by a jury*, and not by the *Clerk of the Court.*

The decision of this question does not depend upon the English authorities. By the 15th section of the "act for the amendment of the law, and the better advancement of justice," (1 R. L. 522,) the Court is authorized, in certain cases, on a judgment by default, to refer it to their Clerk to assess the damages. By the 17th section, if the suit be on any bill of exchange, *promissory note*, &c., truly set forth in the declaration, the execution of such bill or note, &c., need

ALBANY,
Sept. 1823

Colden
v.
Knickerback
er.

Rule of this court as to denying appeals &c.

This case not within rule.

And why.

General assessment of damages upon note and money counts, not error.

ALBANY,
Sept. 1823.

N. Y. Firemen
Insurance
Company
v.
De Wolf.

not be proven. By the 18th section the Clerk is author) zed to take proof and to *reduce the testimony of witnesses to writing ; and, if required, to report the same to the Court.* Now it is a well settled principle that a promissory note may be given in evidence under the money counts. So may the Clerk assess damages on an *account stated.* The assessment of damages by the Clerk being authorized by law, disposes of this point; for we are to presume, (after judgment,) that the necessary proof was given to him, to justify his report. Upon the coming in of that report, the judgment entered upon it is the judgment of the Court.

Our statute enlarges the English rule of reference to the Clerk, and embraces cases in which it would, in England, be necessary to execute a writ of inquiry.

I am, therefore, of opinion, that the judgment of the Supreme Court ought to be affirmed.

For dismissing the writ, 12; For affirming, 8.

ERWIN, LEFFERTS, LIVINGSTON, LYNDE, McINTYRE, REDFIELD and WOOSTER, Senators, concurred.

It was thereupon ORDERED, ADJUDGED and DECREED, that the writ of error brought in this cause be dismissed this Court, and that the plaintiff in error pay to the defendant in error his costs in defending the writ of error, to be taxed, and that the record be remitted, &c.